*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

### UNITED STATES
Appellee

**v.**

### Jonathan QUEZADA, Lance Corporal
United States Marine Corps, Appellant

**No. 21-0089**

Crim. App. No. 201900115

Argue October 20, 2021—Decided December 20, 2021

Military Judges: Matthew J. Kent (motions) and
John L. Ferriter (arraignment, motions, and trial)

For Appellant: *Lieutenant Daniel O. Moore*, JAGC, USN (argued).

For Appellee: *Lieutenant Jennifer Joseph*, JAGC, USN (argued); *Lieutenant Colonel Christopher G. Blosser*, USMC, *Major Kerry E. Friedewald*, USMC, and *Brian K. Keller*, Esq. (on brief); *Lieutenant Colonel Nicholas L. Gannon*, USMC, and *Lieutenant Gregory A. Rustico*, JAGC, USN.

Judge MAGGS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS and Judge HARDY, and Senior Judge EFFRON, joined.

———————

Judge MAGGS delivered the opinion of the Court.

Military judges must give the members "appropriate instructions" before they deliberate on findings. Rule for Courts-Martial (R.C.M.) 920(a). The standard "false exculpatory statements" instruction informs the members that if the accused makes a statement tending to establish his or her innocence, and the statement is later shown to be false, the members may consider "whether this circumstantial evidence points to consciousness of guilt." Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook, ch. 7, para. 7-22 (2020). This Court previously has stated that the false exculpatory statements instruction "announces a correct principle of law." *United States v. Colcol,* 16 M.J. 479, 484 (C.M.A. 1983); *see also Wilson v. United States*, 162 U.S. 613, 620–21 (1896) (upholding a similar instruction). But in this

case, Appellant asserts that the instruction violated his presumption of innocence because he was charged both with committing a substantive offense and with making a false official statement relating to that offense. Upon careful consideration of Appellant's arguments, however, we find no error. We therefore affirm the decision of the United States Navy-Marine Corps Court of Criminal Appeals (NMCCA). *United States v. Quezada*, No. NMCCA 201900115, 2020 CCA LEXIS 378, 2020 WL 6268490 (N-M. Ct. Crim. App. Oct. 26, 2020) (unpublished).

## I. Background

D.E.A, a seventeen-year-old civilian, accused Appellant of providing her with whiskey and, without her consent, licking her vagina and anus and touching other parts of her body. During a subsequent investigation into the incident, Appellant told agents of the Naval Criminal Investigative Service (NCIS) that he did not lick or touch D.E.A.'s vagina, or used words to that effect. Appellant also made exculpatory statements to his wife, to a 911 operator, and to a military policeman desk sergeant. Laboratory analysis of swabs of D.E.A.'s vagina, anus, and ear later identified DNA evidence that strongly confirmed D.E.A.'s accusations against Appellant.

Appellant was charged with one specification of violating a lawful general order by providing alcohol to a minor, one specification of making a false official statement by telling the NCIS agents that he did not touch or lick D.E.A.'s vagina, one specification of sexual assault by bodily harm by penetrating D.E.A.'s vulva with his tongue, and one specification of abusive sexual contact by bodily harm by touching D.E.A.'s ear, anus, and other named body parts with his tongue, in violation of Articles 92, 107, and 120 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 907, 920 (2012 & Supp. IV 2013–2017). Appellant pleaded not guilty to all charges and specifications.

A general court-martial with members tried Appellant. Before the members deliberated on findings, the military judge informed counsel of his intention to provide a false exculpatory statements instruction. Trial defense counsel offered a brief response: "We object to the false exculpatory

[statements instruction] because of the potential confusion with the Article 107, false official [statement charge and specification].” Trial defense counsel did not set forth on the record a request for tailoring of the instruction, nor did trial defense counsel request on the record any other modification of the instruction.

The military judge, however, determined that the requested instruction was “reasonably raised by the evidence,” and rejected trial defense counsel’s objection. The military judge then instructed the members as follows:

> There has been evidence that after the offenses were allegedly committed, the accused may have made a false statement or given a false explanation about the alleged offenses. Conduct of an accused, including statements made and acts done, upon being informed that a crime may have been committed, or upon being confronted with a criminal charge, may be considered by you in light of other evidence in the case in determining the guilt or innocence of the accused. If an accused voluntarily offers an explanation or make[s] some statement tending to establish his innocence, and such explanation or statement is later shown to be false, you may consider whether the circumstantial evidence points to a consciousness of guilt. You may infer that an innocent person does not ordinarily find it necessary to invent or fabricate a voluntary explanation or statement tending to establish his innocence. . . . [T]his inference is not required.

> Whether the statement that was made was voluntary or was false is for you to decide. You may also properly consider the circumstance under which the statements were given, such as whether they were given under oath and the environment under which they were given. Whether . . . evidence as to an accused’s voluntary explanation or statements points to a consciousness of guilt, and the significance, if any, to be attached to any such evidence are matters for determination by you, Court members.

The military judge repeatedly instructed the members that the Government had the burden of proving each element of each offense beyond a reasonable doubt. At no time did the

military judge discuss any lower standard of proof. The military judge also instructed the members as follows:

> An accused may be convicted, based only on evidence before the Court, not on evidence of a general criminal disposition. Each offense must stand on its own, and you must keep the evidence of each offense separate. Stated differently, if you believe or find that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense. If evidence has been presented which is relevant to more than one offense, you may consider that evidence with respect to each offense to which it is relevant.

In arguments on findings, trial counsel focused mostly on testimony by D.E.A. about what happened and on the DNA evidence that implicated Appellant. Appellant's civilian defense counsel identified reasons for doubting D.E.A.'s credibility and pointed to evidence that D.E.A. may have consented to the sexual conduct with Appellant.

The court-martial found Appellant guilty of all the charges and specifications and sentenced him to six years of confinement and a dishonorable discharge. The convening authority approved the sentence as adjudged. On appeal to the NMCCA, Appellant renewed his objection to the false exculpatory statements instruction. The NMCCA, however, concluded that the military judge had acted properly in providing the instruction. *Quezada*, 2020 CCA LEXIS 378, at *7–12, 2020 WL 6268490, at *3–4.

In reaching this conclusion, the NMCCA recognized that the false exculpatory statements instruction is not appropriate for *general denials of criminal wrongdoing*. *Id*. at *9, 2020 WL 6268490, at *3. As this Court explained in *Colcol*, "in order to decide that an accused's general denial of illegal activity is false, the factfinder must decide the very issue of guilt or innocence; and so the instruction would only tend to produce confusion because of its circularity." 16 M.J. at 484. But the NMCCA found this restriction on using the false exculpatory statements instruction inapplicable in this case, reasoning:

> Appellant did not make a general denial of criminal wrongdoing to NCIS; rather, he denied specific

conduct. He specifically denied that he licked [D.E.A.'s] vagina. However, the act of licking [D.E.A.'s] vagina would only satisfy one element of what became Specification 1 of Charge III, sexual assault. Appellant's statement does not resolve the question of whether [D.E.A.] provided her consent to engage in that act, also a key element of the Article 120 offense alleged in Specification 1 of Charge III.

*Quezada*, 2020 CCA LEXIS 378, at \*10, 2020 WL 6268490, at \*4.

The NMCCA also cited *United States v. Opalka*, 36 C.M.R. 938, 944 (A.F.B.R. 1966), a decision that this Court also had cited in *Colcol*, 16 M.J. at 484. *Quezada*, 2020 CCA LEXIS 378, at \*9 n.9, 2020 WL 6268490, at \*3 n.9. In *Opalka*, the Air Force Board of Review indicated that a false exculpatory statements instruction should not "relate the instruction to any specific utterance of the accused" because doing so might "emphasize the prosecution's case to the detriment of the accused" by "indicating a belief that the particular statement or explanation might be false." 36 C.M.R. at 944–45. Relevant to this point, the NMCCA made the following observation:

> [T]he military judge's instruction did not identify any particular statement the members could consider to be a false explanation. There were multiple false exculpatory statements that came out in the course of the trial. Appellant also gave false explanations to his wife, to the emergency operator and to the Desk Sergeant.

*Quezada*, 2020 CCA LEXIS 378, at \*10, 2020 WL 6268490, at \*4.

Although Appellant argued in his brief to the NMCCA that the false exculpatory statements instruction undermined his presumption of innocence in violation of this Court's decision in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), the NMCCA did not expressly address this argument. We consider this point now. The sole assigned issue is:

> The military judge instructed members that they could consider the fact that Appellant made the false official statement with which he was charged as evidence that he was guilty of another charged offense. Did this instruction violate Appellant's right

to a presumption of innocence under *United States
v. Hills*, 75 M.J. 350 (2016)?

*United States v. Quezada*, 81 M.J. 174 (C.A.A.F. 2021) (order
granting review).

## II. Standard of Review

This Court has held that "[w]hether a panel was properly
instructed is a question of law reviewed de novo." *United
States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008). We review
objections to instructions preserved at trial directly, but
review objections not raised only for plain error. *United States
v. Williams*, 77 M.J. 459, 462 (C.A.A.F. 2018). In this case,
some of Appellant's arguments appear to extend beyond the
specific objection to the instructions that Appellant made at
trial. The Government, however, has not argued that the
Appellant forfeited any of the arguments that he now raises.
Accordingly, given the lack of any objection by the
Government, and our ultimate conclusion that Appellant's
arguments have no merit, we do not address the plain error
standard.

## III. Discussion

In accordance with the assigned issue, Appellant relies
heavily on our decision in *Hills* in arguing that the instruction
at issue violated his constitutional presumption of innocence.
In *Hills*, the accused was charged with several offenses
alleging sexual misconduct. 75 M.J. at 352. The military
judge instructed the members that if they found by a
preponderance of the evidence that the accused had
committed one of the charged offenses—even if they were not
convinced beyond a reasonable doubt that the accused had
committed that charged offense—they could consider the
evidence of that charged offense for its tendency to show that
the accused committed the other charged offenses. *Id.* at 353.
On appeal, this Court ruled that the instruction violated the
constitutional requirement of due process "by creating [a] risk
that the members would apply an impermissibly low
standard of proof, undermining both 'the presumption of
innocence and the requirement that the prosecution prove
guilt beyond a reasonable doubt.' " *Id.* at 357 (quoting *United
States v. Wright*, 53 M.J. 476, 481 (C.A.A.F. 2000)).

Appellant acknowledges that this case is somewhat different from *Hills* because the instructions in this case did not involve conflicting standards of proof relating to charged misconduct. As explained above, the military judge repeatedly told the members that the standard of proof was guilt beyond a reasonable doubt and never mentioned any other standard of proof. But Appellant contends that this case nonetheless "implicates *Hills*" because the false exculpatory statements instruction allowed the members to "use charged conduct" (i.e., the alleged false statement charged as a violation of Article 107, UCMJ) to "infer that [Appellant] was guilty of another charge" (i.e., the alleged sexual acts charged as a violation of Article 120, UCMJ). Appellant supports this position with several distinct but related arguments, which we now consider in turn.

## A. Presumption of Innocence

Appellant contends that the military judge "undermined [his] presumption of innocence" in violation of our decision in *Hills* because "the false exculpatory statement instruction permitted the members to infer guilt based on conduct of which [he] was presumed innocent." Appellant explains that the members "were told his denials of sexual assault may have been false and he was charged with a false official statement for denying a sexual assault." In accordance with *Hills* and the precedent upon which *Hills* relied, we certainly agree with Appellant that he was presumed innocent of all the charges and specifications of which he was tried. But we cannot agree with the rest of Appellant s argument.

Contrary to Appellant's specific assertions, the military judge did not instruct the members that "his denials of sexual assault may have been false." Instead, the military judge instructed the members more generally that "the accused may have made a false statement or given a false explanation about the alleged offenses," without identifying specific statements that might be false. *Quezada*, 2020 CCA LEXIS 378, at *7, 2020 WL 6268490, at *3. As the NMCCA recognized, the evidence suggested a number of possible false statements, all of which would justify the false exculpatory statements instruction. In addition, Appellant was not "charged with a false official statement for denying a sexual assault"; he was charged with making a false official

statement that he did not lick D.E.A.'s vagina. As the NMCCA properly recognized, that statement is not a general denial of criminal wrongdoing because licking D.E.A.'s vagina would not have been a criminal offense if D.E.A. consented to the conduct or Appellant made an honest and reasonable mistake about whether D.E.A. consented.

More generally, if Appellant's concern is that the instruction may have allowed the members to use evidence that Appellant made a false statement both as direct proof that he violated Article 107, UCMJ, and as circumstantial evidence of his consciousness of guilt with respect to the Article 120, UCMJ, offenses, we do not see an error. Our decision in *Hills* did not establish a general rule prohibiting the government from introducing evidence that is relevant to more than one offense, and no such general rule exists. As the military judge properly instructed the members, if evidence is relevant to more than one offense, the court-martial may consider that evidence with respect to each offense to which it is relevant. *United States v. Vela*, 71 M.J. 283, 286 (C.A.A.F. 2012) (confirming that this instruction is an accurate statement of the law).

In *Hills*, the central problem was that the instructions "provided the members with directly contradictory statements about the bearing that one charged offense could have on another, one of which required the members to discard the accused's presumption of innocence, and with two different burdens of proof—preponderance of the evidence and beyond a reasonable doubt." 75 M.J. at 357. A *Hills* problem therefore cannot arise absent confusing instructions about the burden of proof. Here, Appellant acknowledges that this case does not involve conflicting burdens of proof. Accordingly, this case does not involve a *Hills* error.

## B. Lack of Tailoring of the Instruction

At trial, as noted above, trial defense counsel offered a general objection to the false exculpatory statements instruction but did not request any specific tailoring of the instruction on the record. In this appeal, Appellant now makes three arguments regarding a lack of tailoring of the false exculpatory statements instruction to the facts of this case. First, Appellant asserts that the military judge had a

duty to "offer an instruction that provided guidance to the members as to which statements could be used to infer consciousness of guilt of the Article 120 charge." Second, Appellant contends that "[w]ithout further tailoring or guidance, members could infer that conduct for which [Appellant] was presumed innocent was now evidence that he was guilty." Third, Appellant faults the military judge for "fail[ing] to instruct the members that the false statement had any probative value other than it was false." "Like in *Hills*," Appellant asserts, the untailored "instruction gave the members conflicting statements about the bearing one charge had on another."

Without addressing the question of whether the false exculpatory statements instruction may require tailoring in some instances, we conclude that each of Appellant's contentions lacks merit in this case. First, the military judge did not have a duty to identify the specific statement or statements that the members might find false; on the contrary, doing so might have improperly influenced the panel members by placing special weight on some evidence as opposed to other evidence. *See Opalka*, 36 C.M.R. at 944–45 (recognizing that "it would have been impossible . . . to relate the instruction to any specific utterance of the accused without indicating a belief that the particular statement or explanation might be false"). Second, for the reasons that we have already provided above, we do not agree that the instruction compromised Appellant's presumption of innocence. Third, the military judge did not have a duty to instruct the members that a false statement had any probative value other than that it was false. As the Supreme Court held in *Wilson,* and as we recognized in *Colcol*, a false exculpatory statement also may provide relevant circumstantial evidence, namely, evidence of a consciousness of guilt. *Wilson*, 162 U.S. at 620–21; *Colcol,* 16 M.J. at 484.

## C. Propensity Evidence

Appellant also contends in his briefs that the false exculpatory statements instruction was improper because the instruction "allowed one charge to become propensity evidence for another" in violation of *Hills*. When asked to explain this contention at oral argument, Appellant's counsel asserted that the members might have thought that merely

because Appellant committed the Article 107, UCMJ, offense, he was more likely to have committed the Article 120, UCMJ, offenses.

With this contention, we cannot agree. Consciousness of guilt evidence is different from propensity evidence. Consciousness of guilt evidence is an acceptable form of circumstantial evidence used to show "awareness of an accused that he or she has engaged in blameworthy conduct." *Black's Law Dictionary* 379 (11th ed. 2019). By contrast, propensity evidence is a generally impermissible form of character evidence in which members "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Military Rule of Evidence 404(b)(1).

There is no propensity problem here. This Court presumes that the members follow the military judge's instructions absent evidence to the contrary. *United States v. Short*, 77 M.J. 148, 151 (C.A.A.F. 2018). In this case, the military judge did not in any way instruct the members that they could use propensity evidence. On the contrary, as described above, the military judge specifically instructed the members (1) that they could not find appellant guilty based "on evidence of a general criminal disposition"; (2) that "[e]ach offense must stand on its own, and you must keep the evidence of each offense separate"; and (3) that "if you believe or find that the accused is guilty of one offense, you may not use that finding or belief as a basis for inferring, assuming, or proving that he committed any other offense."

To be sure, the military judge in *Hills* also gave a "spillover instruction" to the members, warning them that "one offense carries no inference that the accused is guilty of another offense." 75 M.J. at 356–57 (internal quotation marks omitted). But, as this Court reasoned, this instruction did not eliminate the propensity problem because, in a contradictory manner, "the military judge concluded the spillover instruction by reiterating, 'However, [the Government] may demonstrate that the accused has a propensity to commit that type of offense.'" *Id.* at 357 (alteration in original). The spillover instruction in this case, by contrast, contained no similar remark about propensity. This case is thus distinguished from *Hills*.

## D. Circularity

Finally, Appellant argues that the NMCCA "erred when it found that the denial to NCIS did not cause a circularity problem."[1] Specifically, Appellant faults the NMCCA because it "did not conduct an analysis of the effect the instruction had on his denial of the *actus reus* of a specific intent crime when his denial and the specific intent crime were both charged offenses." In Appellant's view, even if the alleged false statement was not a general denial of guilt, the falsity of the statement nonetheless turns on the ultimate question of his guilt or innocence.

We disagree. Appellant denied that he licked D.E.A.'s vagina. This statement was not a general denial of guilt and its falsity also did not determine the ultimate question of whether Appellant was guilty of the Article 120, UCMJ, offense. As the NMCCA recognized, to establish Appellant's guilt, the Government had to prove that D.E.A. did not consent to Appellant's conduct and that Appellant did not act based on a reasonable mistake of fact as to her consent. These additional elements did not automatically follow from the false statement. Indeed, in this case, civilian defense counsel vigorously addressed the issue of consent during his argument on the findings.

For these reasons, we conclude that the military judge and the NMCCA did not err. We therefore have no need to address the parties' arguments about whether any error would have prejudiced Appellant.

## IV. Judgment

The judgment of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.

---

[1] This argument appears to relate more to the application of *Colcol* to this case than to the application of *Hills*. But we do not consider whether this argument falls outside the scope of the granted issue because the Government has addressed the argument in its briefs and because we ultimately conclude the argument has no merit.